United States District Court
Southern District of Texas
**ENTERED**
December 29, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| STEALTH ONSITE SOLUTIONS, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:23-cv-00175 |
| | § | |
| M/V DOUBLE E, *et al.*, | § | |
| Defendants. | § | |

<u>**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff Stealth Onsite Solutions, LLC brought this general maritime and admiralty action against Defendants M/V Double E (the "Vessel"), *in rem*, and Erickson & Jensen Seafood Packing Company, Incorporated ("E&J"), *in personam*, pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.  (Doc. No. 1.)  Pending before the Court is E&J's motion to dismiss for improper venue, or alternatively to transfer this case.  (Doc. No. 30.)  For the reasons stated below, the Court recommends that the district court DENY E&J's motion.

**A.  *Jurisdiction.***

Section 1333 of Title 28, United States Code, confers original jurisdiction on federal district courts over any "civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

This case has been referred to the undersigned magistrate judge for case management – including rulings on non-dispositive motions – and for recommendations regarding dispositive matters.  *See* 28 U.S.C. § 636.

**B.  *Proceedings.***

Plaintiff filed this action against E&J and the Vessel on July 11, 2023.  (Doc. No. 1.) Plaintiff sought the arrest of the Vessel, but that arrest warrant was returned unexecuted.  *See*

Doc. Nos. 6, 10, 11, 12, 13, 14, 15, 16.  Plaintiff then sought a writ of attachment of E&J's business inventory and equipment, but the Court denied that motion because Plaintiff failed to demonstrate entitlement to that relief.  (Doc. Nos. 19, 20.)

Plaintiff subsequently submitted a voluntary notice of partial dismissal without prejudice with regard to the Vessel.  (Doc. No. 29.)[1]  Once served with process, E&J filed this motion to dismiss or transfer this action.  (Doc. No. 30.)  Plaintiff has responded to that motion.  (Doc. No. 37.)  E&J has not filed a reply to Plaintiff's response.

### C.  The dispute.

This case involves services allegedly provided by Plaintiff to the Vessel in Florida. Plaintiff's claim is that E&J, the Vessel's owner, failed to pay for those services as required.

Plaintiff alleges that in the wake of Hurricane Ian in Florida in September 2022, the Vessel was damaged; the hurricane's storm surge stranded the Vessel on land on San Carlos Island in Fort Myers Beach, Florida.  (Doc. No. 1, p. 2.)  E&J allegedly contracted for Plaintiff to "vacuum pump out the fuel," which remained in the Vessel, and then to pump that fuel into E&J's onshore fuel tank.  *Id*. at 2-3.  The cost for this work was to be $35,000.  *Id*. at 3.  Plaintiff alleges that it completed its obligations as required and returned the Vessel to the water in a seaworthy condition.  *Id*. at 2-3.  But despite demanding payment, Plaintiff alleges, E&J has failed to pay for the services.  *Id*. at 3.

The parties have not submitted a copy of any written contract for the Court's review. Plaintiff alleges in its response to the dismissal motion that the parties never agreed on any forum

---

[1]  Plaintiff was permitted to voluntarily dismiss the Vessel because the Vessel had not filed an answer or a motion for summary judgment.  *See* Fed. R. Civ. P. 41(a)(1)(A).  Such a dismissal does not require a court order – it is self-effectuating and terminates the claim in and of itself.  No order or other action of the district court is required.  *See In re Amerijet Int'l, Inc.*, 785 F.3d 967, 973 (5th Cir. 2015) (*per curiam*) (citing, among other authorities, *Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010)).

selection clause in its contract with E&J.  (Doc. No. 37, p. 1.)  E&J did not reply to Plaintiff's

response, so it has not contested that assertion.

### D. E&J's motion to dismiss, and Plaintiff's response.

E&J has moved for dismissal of Plaintiff's claims against it under Federal Rule of Civil

Procedure Rule 12(b)(3).  (Doc. No. 30.)[2]  In its three-page motion, which lacks citation to any

case law, E&J argues that dismissal is necessary because venue is improper.  *Id*. at 1-2.

E&J's motion asserts that venue is improper in this district because Plaintiff has "failed to

allege adequate and relevant facts sufficient to establish that venue is proper in the Southern

District of Texas Dallas Division [sic]."  (Doc. No. 30, p. 1.)  E&J insists that venue is improper

here because:

> Defendants do not reside in Texas and all of the events or omissions allegedly
> giving rise to Plaintiff's claims occurred in Fort Myers Beach, Florida.  Any
> claims related to the manner and means in which Defendants conducted its
> business which Plaintiff alleges give rise to Plaintiff's claims would have
> occurred in Florida.

(Doc. No. 30, p. 2) (emphasis deleted).  E&J adds that "[a]ll the fact and expert witnesses are

located in Florida" and that "[a]ll the evidence concerning this matter is located in Florida."  *Id*.

The Vessel, E&J asserts, has been moored in Fort Myers Beach since September 2022.  *Id*.  E&J

seeks dismissal of this action or, alternatively, transfer to the Middle District of Florida pursuant

to 28 U.S.C. § 1404.  *Id*.[3]

In response, Plaintiff argues that venue is indeed proper in this district.  Plaintiff contends

that, in admiralty cases, venue is proper in any district where the court can obtain personal

---

[2]  E&J's motion purports to be filed also on behalf of the Vessel, *see* Doc. No. 30, p. 1, but Plaintiff had already
voluntarily dismissed the Vessel from this case without prejudice before the motion was filed.  (Doc. Nos. 29, 30.)

[3]  Additionally, E&J dubs its motion as one for *forum non conveniens*, *see* Doc. No. 30, p. 1, but does not elaborate
further.

jurisdiction over the defendant.  (Doc. No. 37, p. 5.)  Here, Plaintiff asserts, the Court possesses

personal jurisdiction over E&J because Plaintiff served E&J at its local place of business in this

district, and therefore venue is proper.  *Id*. at 5-6.

Plaintiff additionally responds that transfer of this case to the Middle District of Florida is

inappropriate.  Citing *Atlantic Marine Construction Co., Inc. v. United States District Court for

the Western District of Texas*, 571 U.S. 49 (2013), Plaintiff argues that neither private nor public

interest factors favor transfer.  (Doc. No. 37, pp. 6-11.)

### E. *Legal standard for venue.*

E&J cites Federal Rule of Civil Procedure 12(b)(3) in support of its motion to dismiss

this case.  That rule provides that a party may move to dismiss an action for "improper venue."

Once a defendant raises this issue, "the burden of sustaining venue will be on [the] Plaintiff."

*See Turner v. Harvard MedTech of Nevada, LLC*, 620 F. Supp. 3d 569, 573 (W.D. Tex. 2022).

"Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper

venue."  *Id*. (citations omitted).  In the Court's consideration of venue, all of the plaintiff's

allegations in the complaint are accepted as true, and all conflicts are resolved in favor of the

plaintiff.  *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009).  In addition, the

Court may look beyond the complaint to evidence submitted by the parties.  *Id*. at 238.  If venue

is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case

to any district or division in which it could have been brought."  28 U.S.C. § 1406(a); Fed. R.

Civ. P. 12(b)(3).  The plaintiff need only make a *prima facie* showing that venue is proper if the

court does not hold an evidentiary hearing.  *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d

602, 609 (5th Cir. 2008).

Plaintiff has invoked this Court's jurisdiction under 28 U.S.C. § 1333 in this *in personam* case.  (Doc. No. 1, p. 2.)  Venue in admiralty and general maritime cases is analyzed differently from venue in federal question or diversity cases.  Section 1391(a)(1) of Title 28, United States Code, prescribes venue rules for "all civil actions brought in district courts of the United States."  But § 1391's regular venue provisions do not apply to admiralty and general maritime cases.  *See In re McDonnell-Douglas Corp.*, 647 F.2d 515, 516 (5th Cir. 1981); *see also* 28 U.S.C. § 1390(b) (venue chapter "shall not govern the venue of a civil action in which the district court exercises the jurisdiction conferred by [28 U.S.C. § 1333] …."). In admiralty and general maritime cases like this one, "venue and personal jurisdiction analyses merge" – venue in an *in personam* action "lies wherever valid service could have been made upon the defendant …." *McDonnell-Douglas*, 647 F.2d at 516.  But even though § 1391's venue provisions do not apply, Plaintiff does still bear the burden of demonstrating that venue is appropriate.  *Cf. Devon Energy Production Co., L.P. v. GlobalSantaFe South America*, Civ. No. H-06-2992, 2007 WL 1341451, at *4 (S.D. Tex. May 4, 2007) (Lake, J.) (applying general maritime law and finding venue proper for all plaintiff's claims against all defendants save one, for whom plaintiff failed to show that venue was appropriate).

### F.  Venue is proper in this district.

Venue in Plaintiff's *in personam* lawsuit against E&J is proper in this district if Plaintiff could have made valid service upon E&J in this district.  *McDonnell-Douglas*, 647 F.2d at 516. E&J's short dismissal motion does not cite any particular authority, other than 28 U.S.C. § 1404, the venue transfer statute, but merely contends that the events in this case occurred in Florida and that the witnesses and evidence are located there.  *See* Doc. No. 30, pp. 1-2.  Plaintiff, in response, points out that § 1391's venue provisions do not apply and that proper venue of *in*

*personam* admiralty and maritime cases is grounded on personal jurisdiction over the defendant. *See* Doc. No. 37, pp. 5 (citing *McDonnell-Douglas*, 647 F.2d at 516).  Even confronted with this argument, however, E&J fails to demonstrate, or even allege, that this Court lacks personal jurisdiction over it.  Indeed, E&J did not reply to Plaintiff's response at all.  Because E&J has not contended that Plaintiff could not have made valid service upon E&J in this district, the district court should conclude that E&J waived any such argument by failing to brief it.  The district court should therefore find that venue is proper in this district.

Any argument that E&J's venue motion itself suffices as a challenge to the Court's jurisdiction would be unsuccessful.[4]  "[O]bjections to personal jurisdiction are waived pursuant to [Federal Rule of Civil Procedure] 12(h) unless expressly asserted by Rule 12 motion to dismiss, notwithstanding that in admiralty practice the venue and personal jurisdiction [analyses] merge."  *Hebert v. Weeks Marine, Inc.*, Civ. No. 04-1876, 2005 WL 8178084, at *4 (W.D. La. Feb. 2, 2005).  Additionally, Federal Rule of Civil Procedure 7(b)(1)(B) requires that a motion seeking a court order "state with particularity the grounds for seeking the order."  Thus, "[e]ven if we assume that an objection to venue in an *in personam* admiralty action includes an objection to service of process, under Rule 7 the stated grounds for the motion to dismiss for lack of venue would have to include insufficient service of process."  *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 325 (5th Cir. 1977).  Here, as in *Davis*, E&J fails to suggest any such ground for dismissal,

---

[4]  E&J has not raised such an argument.  "[T]o properly raise an argument, a party must ordinarily identify the relevant legal standards and any relevant Fifth Circuit cases."  *United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010) (citations omitted).  "The role of a court is 'not to create arguments for adjudication' or 'raise [them] like a Phoenix from the ashes.'"  *Grimes v. Santander Consumer USA*, No. 3:22-CV-1933, 2023 WL 5022276, at *5 n.6 (N.D. Tex. July 13, 2023) (Ramirez, M.J.) (quoting *In re Cao*, 619 F.3d 410, 435 (5th Cir. 2010)), *adopted*, 2023 WL 5021786 (N.D. Tex. Aug. 5, 2023); *see also* Local Rule 7.1B, Local Rules of the United States District Court for the Southern District of Texas (opposed motions shall include or be accompanied by authority).  In the interest of completeness, however, the undersigned briefly addresses the matter here.

and accordingly has waived it.  *See* Fed. R. Civ. P. 12(g)(2), Fed. R. Civ. P. 12(h)(1).  The

district court should therefore reject E&J's dismissal motion.

      In any event, the evidence indicates that E&J could be reached with process in this

district.  *See McDonnell-Douglas*, 647 F.2d at 516 (citing *H&F Barge, Inc. v. Garber Bros., Inc.*,

65 F.R.D. 399, 404 (E.D. La. 1974)).  The evidence also indicates that Plaintiff's service upon

E&J was indeed proper.

      Plaintiff alleged in its complaint that E&J is a Florida corporation, with its principal place

of business in Florida.  (Doc. No. 1, p. 1.)  In its response to E&J's dismissal motion, Plaintiff

alleges that E&J is a resident of Texas because one of its seafood packing plants is located in

Aransas Pass, Texas.  (Doc. No. 37, p. 2.)  But Texas law provides that a "nonresident" includes

"a foreign corporation, joint-stock company, association, or partnership."  Tex. Civ. Prac. &

Rem. Code § 17.041(2).  The Court concludes that E&J is a nonresident for purpose of the Texas

long-arm statute.

      "Whether a defendant in an admiralty action is properly subject to service of process in a

particular district is determined in accordance with the applicable state long-arm statute and

principles of due process embodied in the minimum contacts analysis enunciated by the Supreme

Court in *International Shoe Co. v. State of Washington*, [326 U.S. 310 (1945)], and its progeny.

… [R]ecent decisions have tended towards a liberal construction of a state's long-arm statute in

order to obtain personal jurisdiction over a foreign party in admiralty and maritime cases,

consistent of course with due process."  *Ingersoll Milling Machine Co. v. J. E. Bernard & Co.*,

508 F. Supp. 907, 909 (N.D. Ill. 1981); *see also Ziegler v. Rieff*, 637 F. Supp. 675, 678 (S.D.N.Y.

1986).  Texas' jurisdictional statute is a so-called "long-arm statute," extending the personal

jurisdiction of courts in Texas to the extent allowed by the Fourteenth Amendment's Due

Process Clause, which operates to "limit the power or a State to assert *in personam* jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984); *see also* Tex. Civ. Prac. & Rem. Code §§ 17.042, 17.043.  Therefore, the Court "need only determine whether subjecting [E&J] to suit in Texas would offend the due process clause of the 14th Amendment." *Electrosource, Inc. v. Horizon Battery Technologies, Inc.*, 176 F.3d 867, 871 (5th Cir. 1999).  "Due process in the exercise of personal jurisdiction requires 'minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 425 (5th Cir. 2005) (quoting *Int'l Shoe*, 316 U.S. at 316)).

The undersigned concludes that E&J has engaged in meaningful contacts with Texas. Plaintiff alleges, and has submitted uncontradicted evidence, that E&J maintains a seafood packing facility in this division, in Aransas Pass, Texas, and that it has regularly conducted shrimping operations in this division.  (Doc. No. 37, p. 2; Doc. No. 37-2, p. 3 (Declaration of Kenneth Isbell, Dec. 2, 2023); Doc. No. 37-4 (Dun & Bradstreet excerpt showing E&J packing location in Aransas Pass); Doc. No. 37-5 (internet printout of radio news story about E&J's operations in Aransas Pass); Doc. No. 37-6, p. 5 (Tampa Bay Times news article referencing E&J's Texas operations).)  Plaintiff has also submitted evidence, again uncontradicted and undisputed, that it served E&J with process in this case at E&J's Aransas Pass facility.  (Doc. No. 37-3 (summons returned with proof of service); *see also* Doc. No. 23.)

Additionally, the submitted evidence indicates that Plaintiff's service upon E&J was proper.  Federal Rule of Civil Procedure 4(h)(1) provides that, unless federal law provides otherwise, service on a corporation must be served in a judicial district of the United States either (1) following state law for serving a summons in an action brought in courts of general

jurisdiction in the state where the district court is located or where service is made or (2) by

delivering a copy of the summons and complaint to an officer, a managing or general agents, or

any other agent authorized by appointment or by law to receive service of process and – if the

agent is one authorized by statute and the statute so requires – by also mailing a copy of each to

the defendant.  Fed. R. Civ. P. 4(h)(1); *see also* Fed. R. Civ. P. 4(e)(1).  Here, Plaintiff asserts

and has submitted uncontradicted evidence that it served the complaint and summons upon

E&J's manager at its Aransas Pass packing facility.  *See* Doc. No. 37-3.  Meanwhile, E&J does

not challenge the Court's personal jurisdiction over it.  Nor does E&J contend that it was not

properly served with process in this case.  As a result, and considering the evidence submitted by

Plaintiff,[5] the undersigned concludes that the Court E&J was properly served, and that venue is

therefore appropriate in this district.  *Cf. Whitney v. Man Engines & Components, Inc.*, Civ. No.

H-10-2370, 2010 WL 4065604, at *1 (Atlas, J.) (in admiralty case, court finds jurisdiction and

venue where defendant did not challenge personal jurisdiction or proper service).

### G.  E&J has failed to demonstrate that transfer of this action to the Middle District of Florida would be clearly more convenient.

E&J moves alternatively for transfer of this case to the Middle District of Florida.  (Doc.

No. 30, pp. 1-2.)  A court, for the convenience of the parties and witnesses and in the interests of

justice, may transfer any civil action to any other district or division where it might have been

brought.  28 U.S.C. § 1404(a).  The decision whether to transfer is made to prevent waste of

time, energy, and money and to protect litigants, witnesses, and the public against unnecessary

---

[5]  Again, the Court may consider Plaintiff's allegations in the complaint and extrinsic evidence submitted by the parties in determining whether venue is proper.  *See Ambraco*, 570 F.3d at 237-38.

inconvenience and expense.  *See Stabler v. New York Times, Co.*, 569 F. Supp. 1131, 1137 (S.D. Tex. 1983) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

Plaintiff alleges that no forum selection clause existed in its contract with E&J (Doc. No. 30, p. 1), and E&J has not attempted to refute that assertion.  In the absence of a valid and enforceable forum selection clause, a court considers whether the judicial district sought by the movant is one in which the case could originally have been brought.  *See Buc-ee's, Ltd. v. Bucks, Inc.*, 262 F. Supp. 3d 453, 462 (S.D. Tex. 2017) (Hittner, J.); *see also In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  If so, then the court balances certain public and private factors to determine whether the convenience of the parties and witnesses and the interests of justice require that the case be tried elsewhere.  *See id.*

The party seeking transfer bears the burden of demonstrating that transfer is warranted.

*See Qualls v. Prewett Enterprises, Inc.*, 594 F. Supp. 3d 813, 820 (S.D. Tex. 2022) (Brown, J.).

> This "good cause" burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled.  When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of the parties and witnesses, in the interest of justice."

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

Plaintiff contends that its choice of venue should be afforded "great weight and should not be rejected unless clearly outweighed by other considerations."  (Doc. No. 37, p. 7) (citing *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 773-74 (E.D. Tex. 2000); *Atlantic Marine*, 571 U.S. at 63).  Although a plaintiff's choice of venue is not itself a factor in the public and private interest analysis, "the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is clearly more convenient than the transferor venue."  *Qualls*,

594 F. Supp. 3d at 823 (internal quotation and citation omitted); *accord Volkswagen of Am.*, 545 F.3d at 315 ("Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

E&J seeks transfer to the Middle District of Florida. This case could have been brought in that district. As discussed above, an admiralty action may be brought wherever valid service could have been made upon the defendant. E&J is a Florida corporation with its principal place of business in Fort Myers Beach, Florida, located in the Middle District of Florida. *See* Doc. No. 1, p. 1; Doc. No. 30, pp. 1-2. E&J could have been served with process in the Middle District of Florida and would be subject to that court's jurisdiction, and so Plaintiff could have brought this case there.

Assessing the question of convenience, the Court now considers the private and public interest factors, none of which are given dispositive weight. *Volkswagen AG*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). "Courts are not to merely tally the factors on each side." *Adams v. Experian Info. Servs., Inc.*, No. 4:21-CV-069, 2021 WL 4891381, at *2 (E.D. Tex. Oct. 20, 2021) (citing *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) (*per curiam*)). "Rather, courts 'must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of "clearly more convenient."'" *Souza v. Health Care Serv. Corp.*, No. 4:21-CV-2733, 2022 WL 2124455, at *3 (S.D. Tex. Jan. 12, 2022) (Sheldon, M.J.), *adopted*, 2022 WL 2118983 (S.D. Tex. June 13, 2022). A court should not transfer a case where the result is merely to shift the inconvenience from the moving party to the non-moving party. *See Greene v. W&W Energy Servs., Inc.*, No. 2:19-CV-249, 2019 WL 5741567, at *3 n.3 (S.D. Tex. Nov. 4, 2019) (Morales, J.); *see also Sivertson v. Clinton*, No. 3:11-CV-0836, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011).

The private factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Sivertson*, 2011 WL 4100958, at *4. The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law." *Id*.

### 1. Private interest factors.

E&J does not specifically mention or discuss the private interest factors in its brief. It does argue that "[a]ll the fact and expert witnesses are located in Florida" and that "[a]ll the evidence concerning this matter is located in Florida." (Doc. No. 30, p. 2.) The Vessel, E&J asserts, has been moored in Fort Myers Beach since September 2022. *Id*.

In opposition, Plaintiff argues that E&J is a resident of this district,[6] and that E&J has failed to specify how either it or its witnesses would be inconvenienced by litigating in this district. (Doc. No. 30, pp. 9, 10.) Plaintiff adds:

> [I]t is undisputed that [] E&J has managerial employees in this district who manage shrimping operations involving the Vessel. Moreover, as the plaintiff would be inconvenienced by the transfer as all of its employees and documentary evidence [are] in this district, a transfer would simply amount to shifting any inconvenience to the plaintiff.

*Id*. at 9. Plaintiff also observes that E&J has not demonstrated any need for a jury or the Court to view the Vessel in order to adequately present its case at trial. *Id*. at 10 n.5.

---

[6] As discussed above, the undersigned disagrees with Plaintiff's view – E&J is a nonresident defendant, although it does maintain a place of operations in this division.

### a. *Ease of access to sources of proof.*

The first private interest factor focuses on the location of documents and physical evidence relating to the case.  *See Volkswagen of Am.*, 545 F.3d at 316.  "The question is *relative* ease of access, not *absolute* ease of access."  *Radmax*, 720 F.3d at 288 (emphasis in original).  "That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case."  *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (citing *Volkswagen of Am.*, 545 F.3d at 316).  When the vast majority of evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis.  *Id*. (citing *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)).

E&J does not specifically discuss any documents related to this case but does state that the Vessel and "[a]ll the evidence concerning this matter" are located in Florida.  (Doc. No. 30, p. 2.)  In response, Plaintiff asserts that all of its "documents relevant to this case are kept in the Southern District of Texas."  (Doc. No. 37, p. 2; Doc. No. 37-2, p. 1 (Isbell Declaration).)  Neither party asserts that the documents relevant to this case are voluminous, that they are less than fully and readily portable, or even that they exist in physical form at all as opposed to being stored electronically.  Additionally, neither party alleges that the Vessel itself carries any evidentiary significance in this contract dispute.  In the absence of more, the undersigned concludes neither party has established that either this district or the Middle District of Florida provides greater relative ease of access to relevant documents or evidence in this case.  Because relative ease of access to documents or evidence does not appear to be significantly different in either district based on the information provided to the Court, this factor is therefore neutral with respect to transfer.

### b. Availability of compulsory process to secure witness attendance.

Neither Plaintiff nor E&J have identified any witnesses who might be unwilling to testify. "[T]he availability of compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *Planned Parenthood*, 52 F.4th at 630-31 (quoting *Hefferan v. Ethicon Endo-Surgery, Inc.*, 828 F.3d 488, 499 (6th Cir. 2016)). This private interest factor is therefore neutral.

### c. Cost of attendance for willing witnesses.

To assess the third factor, the Court focuses on the so-called "100-mile threshold." *TikTok*, 85 F.4th at 361 (citing *Volkswagen of Am.*, 545 F.3d at 315). "When the distance between an existing venue for trial … and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (internal quotation and citation omitted). This is because it is more convenient for witnesses to testify at home, and additional distance means additional travel time and additional expenses for meals and lodging, as well as time that the witnesses must be away from their regular employment. *Id.*

The convenience of employee witnesses is not weighed heavily in this analysis. "It is the convenience of non-party witnesses, rather than that of employee witnesses … that is the more important factor and is accorded greater weight." *Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1153, 1165 (S.D. Tex. 1994). "Courts in this District … give less weight to party-employee witnesses than to nonparty witnesses in analyzing the convenience factor." *GUI Global Prods., Inc. v. Samsung Electronics Co., Ltd.*, No. 4:20-CV-2624, 2021 WL 3705005, at *6 (S.D. Tex. May 28, 2021) (Bennett, J.) (citing *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992)). Convenience for key

nonparty witnesses would thus be given considerable weight in assessing this private interest factor.  *See Fuchs v. Amazon Web Servs., Inc.*, Civ. No. H-23-2031, 2023 WL 5435873, at *3 (S.D. Tex. Aug. 23, 2023) (Rosenthal, J.) (citing *Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 410 (S.D. Tex. 2016) (Hanks, J.)).  Here, however, neither party contends that any nonparty witnesses, let alone key nonparty witnesses, would be required.  Additionally, neither party states how many of its party witnesses would be required to testify in this case.

E&J asserts that "[a]ll the fact and expert witnesses are in Florida."  (Doc. No. 30, p. 2.) E&J fails, however, to identify the witnesses who would testify, and has not proffered the substance of their testimony.  This diminishes the weight assigned to their perceived inconvenience.  *Cf. GUI Global Prods.* 2021 WL 3705005, at *5.  E&J also does not elaborate on what expert witness testimony it believes might be necessary in this contract payment dispute case, but the convenience of expert witnesses in any event weighs little in the § 1404(a) analysis. *See Houston Trial Reports, Inc. v. LRP Pubs., Inc.*, 85 F. Supp. 2d 663, 669 (S.D. Tex. 1999) (Rosenthal, J.).

Plaintiff, meanwhile, counters that E&J's key witnesses – those who would testify in this case – "spend at least part of their time in this district on a regular basis operating its shrimp processing plant and fishing in the Vessel."  (Doc. No. 37, p. 10.)  Plaintiff also alleges that "E&J has managerial employees in this district who manage shrimping operations involving the Vessel," *id*. at 9, but does not claim that any of those managerial employees would be called to testify as witnesses regarding Plaintiff's provision of services to the Vessel in Florida.  Plaintiff does not identify any "key witnesses" in this case.  Indeed, Plaintiff's argument on this point is just that – argument – because it provides no specific evidence that E&J's key witnesses (whoever they are) continue to have any presence, even occasionally, in this district.  Argument

15 / 22

of counsel is not evidence.  *See Chester v. Assocs. Corp. of N. Am.*, No. 3:97-CV-3186-L, 2000 WL 743679, at *3 (N.D. Tex. May 26, 2000).[7]  Still, E&J filed no reply controverting Plaintiff's motion response or its factual assertions.  The undersigned thus grants (very) limited weight to the possibility that one or more of E&J's witnesses might happen to be in this district for shrimping operations at the time of trial in this case.

Plaintiff also contends that all of its employees are located in this district.  (Doc. No. 37, p. 2; Doc. No. 37-2, p. 2.)  Plaintiff does state, however, that its principal place of business is located in Pasadena, Texas.  *Id.*  Pasadena is not located in this division; it lies in the Houston Division, some 220 miles from Corpus Christi – three to four hours' drive, depending on traffic and the driver's level of assertiveness.  Plaintiff does not state how many, if any, of its employees reside in the Corpus Christi Division, and does not allege that any of its witnesses reside in this division as opposed to the Houston Division.

The Fifth Circuit has "never framed the transfer analysis as focusing exclusively on either the destination *district* or the destination *division*."  *Planned Parenthood*, 52 F.4th at 631 n.4 (emphasis in original).  At the same time, the district court in *Planned Parenthood* analyzed this factor in terms of relative ease and cost for witnesses traveling to Amarillo (the division in the Northern District of Texas where the case was originally filed) versus Austin (the proposed destination division in the Western District of Texas).  *See id.* at 631 & n.4.

Viewed through a district-wide lens, this private interest factor appears evenly balanced.  Stealth is based in this district, and states that all of its employees are located in this district; E&J

<hr />

[7]  Plaintiff offers no specific record citation supporting this assertion.  The Isbell Declaration (Doc. No. 37-2) does not contain any such claim.  One of the news articles submitted by Plaintiff (Doc. No. 37-5) does include pictures of E&J employees in Aransas Pass, but that article was published more than five years ago.  The other news article (Doc. No. 37-6) indicates that E&J employees were not traveling to Texas for shrimping operations because of the cost of fuel.

is based in Florida and claims that all of its witnesses are there.  But while the simplicity of a district-wide view for comparison might be superficially appealing, a division-specific look seems more appropriate in this particular case.  Viewed more narrowly, it is apparent that some or all of the witnesses on both sides of this lawsuit would be required to travel more than 100 miles – either from Florida or from the Houston Division – for a Corpus Christi trial in this case. By contrast, if the case were transferred to the Fort Myers Division of the Middle District of Florida, it appears that at least some of E&J's witnesses might not be required to travel.

The parties did not submit any information regarding travel required for trial in this case. The Court's own research reveals that there are no direct flights between Fort Myers and Corpus Christi.  Flights between the two cities can be had, on a randomly selected Wednesday in mid-January 2024 with one connection through either Houston or Dallas/Fort Worth, for as low as $154 each way, with a total scheduled travel time of just over five hours.  Nonstop flights are available from Houston to Fort Myers on that same day, but for slightly more: $169 each way, with a total scheduled travel time from departure to arrival of two hours and 14 minutes. Meanwhile, any of Plaintiff's witnesses who must travel from Houston to Corpus Christi would incur a travel cost of about $147 each way by car for the three- to four-hour trip (utilizing the $0.67 per mile IRS mileage reimbursement rate for 2024), or $79 each way for a flight lasting less than an hour.

The difference in monetary cost of travel between the various cities is relatively minimal. A somewhat higher cost appears to lie within the greater time necessary for travel to Corpus Christi as opposed to Fort Myers: this additional required time also increases the likelihood of additional meal and lodging costs.  But although E&J's costs might be reduced if this case were transferred, E&J has failed to identify what witnesses would be spared that burden and has not

17 / 22

proffered the substance of those witnesses' testimony.  And if E&J's witnesses are its employees, then the importance of this factor is further diminished.  Plaintiff's costs, meanwhile, can be expected to increase if it is forced to litigate this case in Florida, although this fact too would diminish in importance if Plaintiff's witnesses are its own employees.  The undersigned concludes that, although the monetary cost of litigating in this division may be slightly higher, the difference is not so great as to tip the balance in favor of transfer.  This factor is neutral.

### d.  Other practical problems.

This factor requires an examination into "all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Volkswagen AG*, 371 F.3d at 203.  The garden-variety delay associated with a transfer is not to be taken into consideration here.  "Were it, delay would mitigate against transfer in every case."  *Radmax*, 720 F.3d at 289.  The parties have identified no other practical problem that would render trial in any other forum either more or less convenient.  This factor is therefore neutral as well.

### 2.  Public interest factors.

E&J does not mention the public interest factors in its brief.  Plaintiff does discuss them (Doc. No. 37, pp. 8-9), and the undersigned evaluates them here.

### a.  Administrative difficulties flowing from court congestion.

"The first public interest factor – the administrative difficulties flowing from court congestion - is 'not whether transfer will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'"  *ExxonMobil Global Servs. Co. v. Bragg Crane Svc.*, No. 4:21-cv-03008, 2022 WL 1507204, at *5 (S.D. Tex. May 12, 2022) (Edison, M.J.) (quoting *Hillestad v. LLOG Expl. Co.*, No. 3:17-CV-00341, 2018 WL 4938708, at *7 (S.D. Tex. Sept. 20, 2018) (cleaned up)).  Again, E&J has not made any argument with regard

18 / 22

to this factor, but Plaintiff has submitted a statistical comparison drawn from the Administrative Office of the United States Courts indicating that trial in this district could take place more quickly than in the proposed transferee district. *See* Doc. No. 37-7 (for 12-month period ending June 30, 2023, median of 24.0 months from filing to trial for civil cases in the Southern District of Texas, median of 34.3 months for such cases in the Middle District of Florida). The first public interest factor therefore weighs against transfer.

### b. Interest in having localized disputes decided at home.

The second public interest factor is the local interest in having localized controversies decided at home. This factor analyzes the factual connection that a case has with both the transferee and transferor venues. "The location of the alleged wrong is of 'primary importance.'" *Qualls*, 594 F. Supp. 3d at 825 (quoting *Boutte v. Cenac Towing, Inc.*, 346 F. Supp. 2d 922, 933 (S.D. Tex. 2004)). Additionally, "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Souza*, 2022 WL 2124455, at *4 (quoting *Fujitsu, Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009)).

This factor ultimately weighs in favor of transfer. True, some aspects of this factor do appear neutral: Plaintiff's principal place of business is in Texas, while E&J's principal place of business is in Florida. *Cf. ExxonMobil*, 2022 WL 1507204, at *5 (citing *Perez v. LinkedIn Corp.*, No. 4:20-CV-2188, 2020 WL 5997196, at *5 (S.D. Tex. Oct. 9, 2020) (Atlas, J.) (factor neutral where defendant was headquartered in one district and plaintiff was a resident of a district in another state). Additionally, while Plaintiff's work on the Vessel allegedly occurred in Florida, it is E&J's failure to pay for that work that is the alleged wrong in this case, and that failure's consequence arguably is felt equally in this district and in the Middle District of Florida.

And no jury duty concerns are present in this case because E&J is not entitled to a jury trial in an admiralty case such as this.  *See* Fed. R. Civ. P. 38(e); *Harrison v. Flota Mercante Gancolombiana*, 577 F. 2d 968, 987-88 (5th Cir. 1978).

But the fact remains that Hurricane Ian occurred in Florida, the Vessel was damaged in Florida, Plaintiff was contracted to provide the repair services in Florida, Plaintiff performed all of its work in Florida, and E&J allegedly failed to pay in Florida.  The Middle District of Florida has a strong localized interest in deciding this case.

By contrast, the Corpus Christi Division has no relevant factual connection to this litigation.  Plaintiff is based in the Houston Division, not in the Corpus Christi Division.  Plaintiff filed its original complaint in this division seeking the *in rem* arrest of the Vessel, which it believed was located in this division at the time suit was filed.  *See* Doc. No. 1, pp. 1-2.  The Vessel has now been established to be located in the Middle District of Florida, and Plaintiff has dropped its *in rem* case against the Vessel.  Without the Vessel as a party, this case now bears far fewer ties to this division.

Although E&J maintains a place of operations in this division, none of the relevant events in this case relate to that place of operations: all relevant events occurred in the Middle District of Florida.  Ultimately, this factor weighs in favor of transfer to that district.

### c. Familiarity with the applicable law, and conflict of laws.

The third factor, the familiarity of the forum with the law that will govern the case, is neutral.  "When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation."  *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004) (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961)).  Here, maritime service and maritime commerce appear to be the principal objective of the contract, as Plaintiff was providing service

to the Vessel in order for the Vessel to become seaworthy again, so that it could resume its shrimping activity.  Neither party has pointed to any particular state interest in this case, such that the maritime contract at issue here is of such a local nature that its validity should be judged by state law.  *Cf. Kossick*, 365 U.S. at 735.  The main consideration is to maintain the uniform meaning of maritime contracts, *see Kirby*, 543 U.S. at 28, and because there are no articulated state interests there is no reason to apply any state law rather than federal maritime law.  *Accord In re Chester J. Marine LLC*, 636 B.R. 704, 714-15 (Bankr. E.D. La. 2021) (dispute over maritime contracts was not inherently local and thus was correctly governed by federal maritime law).  The parties suggest no particular divergence in expertise between the two districts with regard to application of federal maritime law.  Thus, this factor is neutral.  And there is no foreign law applicable to this case, so the fourth public interest factor is neutral too.

### 3. *Weighing the factors.*

All three of the private interest factors, then, all are neutral.  Of the public interest factors, one weighs against transfer, one favors transfer, and the other two are neutral.  As noted above, the public and private interest factors are not simply to be tallied.  The Court is to assess all of the factors and then determine whether litigation of this case in the Middle District of Florida is clearly more convenient than litigation here.

It would not have been illogical for Stealth to bring this case in the Middle District of Florida, and any attempt to transfer this case from that district to any other venue would likely have failed.  But it is E&J who bears the burden here: E&J must demonstrate that litigation in the Middle District of Florida is "clearly more convenient."  The undersigned's weighing of the relevant factors indicates that E&J has not demonstrated that transfer would result in litigation

that is "clearly more convenient" for the parties and witnesses.  The undersigned therefore recommends denial of E&J's motion to transfer.

### H. Conclusion and recommendation.

E&J's motion to dismiss or transfer this case (Doc. No. 30) should be DENIED.

### I. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.  A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on December 28, 2023.

MITCHEL NEUROCK
United States Magistrate Judge